(643 P.2d 1133)
No. 53,404

PEGGY BENNETT, *Appellee,* v. COLONIAL LIFE AND ACCIDENT INSURANCE COMPANY, *Appellant.*

Opinion filed April 22, 1982.

*J. Steven Pigg* and *Larry G. Pepperdine,* of Fisher, Patterson, Sayler & Smith, of Topeka, for the appellant.

*Timothy A. Short* and *Fred Spigarelli,* of Pittsburg, for the appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

BULLOCK, J.: Prior to the dates material in this controversy, the life of Michael G. Bennett was insured by Colonial Life and Accident Insurance Company under a policy of insurance Michael obtained through his employer. Peggy Bennett, plaintiff below, was designated beneficiary of Michael's insurance policy. The premiums for this insurance were paid by Michael's employer under a payroll deduction plan. The entire premium was deducted from Michael's wages, the employer contributing nothing.

On or about August 24, 1977, Michael communicated to his employer his desire to cancel his insurance coverage. Pursuant to these instructions, the employer struck Michael's name from

Colonial's August 24, 1977, invoice and returned the invoice to Colonial with no payment for Michael. No further withholdings were made from Michael's pay for insurance premiums.

Upon receipt of the August invoice, Colonial canceled Michael's policy on September 13, 1977 (premiums having been previously paid through September 4, 1977). On September 15, 1977, Michael died.

After stipulating to the foregoing facts, both parties below filed motions for summary judgment. The trial court sustained plaintiff's motion, holding the 31-day grace period for the payment of premiums contained in the policy operated to extend coverage beyond Michael's death. This appeal followed.

1. Colonial's first issue turns on the construction and interpretation of the following clause in the contract:

"**Grace Period**—Any premium not paid on or before its due date is in default but a grace period of thirty-one days, without interest, will be allowed for the payment of every premium after the first, during which period this policy will continue in force. If death occurs within the grace period, any premium then due and unpaid will be deducted from the amount otherwise payable."

Colonial argues that this clause provides a 31-day grace period before the policy can be canceled by the insurer for nonpayment of premiums, and that the clause does not apply where the policy is canceled at the request of the insured. Colonial further argues that the insured here expressly requested cancellation of the policy and that pursuant to that request the policy was canceled prior to the death of the insured.

Plaintiff, on the other hand, argues that the clause applies to any nonpayment of premium, regardless of the reason therefor, and that in any event the insured here did not cancel the policy. In essence plaintiff's position is that this clause in the policy operates to extend coverage for 31 days in all cases.

The question of whether the policy was canceled by the insured will be addressed first.

The policy here contains no provisions regarding cancellation by the insured, nor would such provisions be exclusive if provided in the policy.

"A method of cancellation provided for in an insurance policy is not necessarily exclusive so as to preclude an effective cancellation by mutual agreement without compliance with the method so provided." *Shunga Plaza, Inc. v. American Employers' Ins. Co.,* 204 Kan. 790, Syl. ¶ 1, 465 P.2d 987 (1970).

The rules governing the cancellation of an insurance contract by mutual consent are the same as those governing the cancellation of any contract by mutual consent, and are similar to those for making a contract. There must be a meeting of the minds of the parties. *Riddle v. Rankin,* 146 Kan. 316, 323, 69 P.2d 722 (1937). In the case at issue, the insured told his employer to cancel the policy and to stop withholding the premium from his salary. The employer communicated this to the insurer by not withholding and forwarding the premium and by removing the name of the insured from the list of covered employees. The insurer acted on this information by cancelling the policy prior to the death of the insured. On these facts we conclude that there was a meeting of the minds of the parties regarding cancellation of the policy, prior to the death of the insured.

The remaining question is whether the grace period in the policy applies to extend coverage where the policy is canceled by the mutual consent of the parties. Our examination of the authorities reveals that the sole purpose of a grace period is to prevent immediate lapse upon failure to pay a premium. Although the effect is to continue the policy in full force during the grace period, the clause does not change the due date of the premium, it merely provides a period within which the default may be cured without lapse of the policy. It is in essence a waiver of default provision. 6 Couch on Insurance 2d § 32:132.

As observed in *Davis v. Met. Ins. Co.,* 161 Tenn. 655, 659, 32 S.W.2d 1034 (1930):

"It must be borne in mind that this grace provision does not contemplate *free* [emphasis in original] insurance. The grace is allowed in order that the insured may have this extension of opportunity within which to pay another premium and thus avoid forfeiture for non-payment on the date fixed for payment. But the contemplation is that the charge accruing as compensation for a continuance of the liability obligation will ultimately be paid. This, of course, involves a mutual expectation that the policy contract is to be continued in force as between the parties, at least throughout the period of grace. For example, in this case the premiums were payable monthly in advance and the monthly premium charge is for that service, that is, the carrying of the risk for that month. *If by a mutual agreement, or upon notice duly given by the insured, the contract of insurance between the parties is cancelled as of an approaching date, to which date the premium has been theretofore paid, the contract terminates as of that date, and all obligations as between the parties, on the one hand to pay further premiums, and on the other to incur extension of liability, are at an end."* Emphasis added.

Likewise, a grace period applies only to the date when a

premium is due and by definition has no application to the terminal date on which an insurance policy expires by its terms *or by mutual agreement of the parties.* 6 Couch on Insurance 2d § 32:121. See also *Miller, Ap., v. The Travelers Ins. Co.,* 143 Pa. Super. Ct. 270, 17 A. 2d 907 (1941), and *Johnson v. Metropolitan Life Ins. Co.,* 52 Ga. App. 759, 184 S.E. 392 (1936).

Thus, we conclude the policy was canceled by the mutual consent of the parties prior to the time this claim arose and the grace period of the policy does not apply.

2. The second issue pertains to the applicability of K.S.A. 40-434 to the policy in question. K.S.A. 40-433 provides: "No policy of group life insurance shall be delivered in this state unless it conforms to one of the following descriptions: (1) . . . (b) . . . No policy may be issued on which the entire premium is to be derived from funds contributed by the insured employees." This language appears in the statute in effect at the time the policy here was issued, and was not altered by the 1980 amendment of 40-433. Since the entire premium here was deducted from the employee's salary, this policy does not qualify as a policy of group life insurance. K.S.A. 40-434 sets forth required provisions for group life insurance policies. Since the policy here is not a group policy, 40-434 does not apply.

3. The third issue concerns the cancellation notice requirements of K.S.A. 40-434(1). Having previously determined that the provisions of K.S.A. 40-434 are not applicable to the policy which is the subject of this action, this issue is moot.

From the foregoing, we conclude that the trial court erred in sustaining plaintiff's motion for summary judgment and in denying Colonial's motion. Accordingly the judgment is reversed and judgment is herewith entered for Colonial and against plaintiff for costs.